**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **HOME DIALYSIS OF NORTH ATLANTA, INC.** | |
| **Plaintiff,** | |
| **vs.** | **CIVIL ACTION NO. _____** |
| **HANJIN SHIPPING COMPANY, LTD; a foreign corporation, HANJIN INTERMODAL AMERICA, LTD; a foreign corporation, and HANJIN SHIPPING COMPANY, LTD. PREFERRED PROVIDER MEDICAL BENEFITS PLAN; an ERISA-governed Employee Benefit Plan, jointly and severally,** | |
| **Defendants.** | |

**COMPLAINT**

*PRELIMINARY STATEMENT*

1. This is an action for payment of medical bills that were to be covered by an Employee Retirement Income Security Act of 1974, as amended ("ERISA") benefit plan. The spouse (the "Patient") of an employee at Hanjin Shipping

1

Company, Ltd. (the "Employer") was entitled to healthcare benefits provided by the Hanjin Shipping Company, Ltd. Preferred Provider Medical Benefits Plan (the "Plan").

From December 16, 2010 to June 11, 2011, Home Dialysis of North Atlanta, Inc. (the "Provider") provided dialysis services and supplies to the Patient.  The Patient assigned the benefits she derived from the Plan to the Provider.  During the first three months of treatment, between December 16, 2010 and February 28, 2011, the Plan paid the Provider 100% of billed charges for each treatment.  Then, suddenly and without warning or reason, starting on March 1, 2011, the Plan drastically reduced reimbursement by nearly ninety percent.  From March 1, 2011 until June 11, 2011, the Plan reimbursed the Provider at rates of approximately $150 per treatment when the treatments were billed at $1,300 each.  The Provider has attempted to determine how and why the Plan reduced the reimbursements, but the Plan has refused to disclose pertinent documentation as required under ERISA.

The Plan violated the Medicare Secondary Payer Provisions of the Social Security Act (MSP) and ERISA by enforcement of reimbursement rates contrary

2

to the Plan's provisions.  Furthermore, it appears that the Plan has differentiated the Patient's benefit determinations by taking into account her end-stage renal disease condition, in violation of the MSP.

## *THE PARTIES, JURISDICTION, AND VENUE*

2. Plaintiff, Home Dialysis of North Atlanta, Inc. (the "**Provider**") is a domestic corporation, duly organized and existing under the laws of Georgia, with its registered agent located at 980 Johnson Ferry Road, Suite 410A, Atlanta, Georgia 30342.

3. Defendant, Hanjin Shipping Company, Ltd., (the "**Employer**") is a South Korean corporation authorized to transact business with the Georgia Secretary of State.  The Employer's principal address in the United States is 80 East Route 4, Suite 490, Paramus, New Jersey 07652, and its locally registered agent is Tony Kim located at 4300 North Point Parkway, Alpharetta, Georgia 30022.

4. Defendant, Hanjin Intermodal America, Ltd. (the "**Plan Administrator**"), is an Illinois corporation authorized to transact business with the Georgia Secretary of State and is the named Plan Administrator and Fiduciary.  The Plan

3

Administrator's principal address is 1111 East Watson Center Road, Unit A, Carson, California 90745, and its locally registered agent is CT Corporation System located at 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

5. Defendant Hanjin Shipping Company, Ltd. Preferred Provider Medical Benefits (the "**Plan**") is a self-funded group health plan under which the Patient received her health benefits. The Plan's funding is derived from the funds of the Employer and contributions made by covered employees, including the Patient's spouse. The Plan's agent for service of legal process is Hanjin Intermodal America, Ltd.

6. The Plan is an "employee welfare benefit plan" within the meaning of ERISA 3(1), 29 U.S.C. §1002(1).

7. The Plan's purpose is to provide medical and health benefits to its eligible employees and their eligible dependents, including the Patient.

8. This action arises under ERISA, 29 U.S.C. §1000, *et. seq.* and the MSP, 42 U.S.C. §1395y, *et al.*, giving this Court jurisdiction pursuant to ERISA 502, 29 USC §1102 and 28 USC §1331, respectively.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391, in that all

4

Defendants are authorized to transact business in this state and their registered agents are located in this judicial district.

## *FACTUAL ALLEGATIONS*

10. The Patient's spouse was employed by the Employer.

11. The Employer routinely deducted amounts from the Patient's spouse's paycheck for the purpose of paying the Patient's portion of the cost to provide healthcare benefits.

12. At all relevant times, between December 16, 2010 and June 11, 2011, the Patient was a "Plan Participant" as defined in the Plan and within the meaning of ERISA 3(7), 29 U.S.C. §1002(7). *The Plan is attached as Exhibit 1.*

13. At all relevant times, Plan Administrator was a named fiduciary of the Plan and charged, as follows, to:

> administer this Plan in accordance with its terms and establish it policies, interpretations, practices, and procedures. It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary

authority to construe and interpret the terms and provisions of the Plan, . . .  The decisions of the Plan Administrator will be final and binding on all interested parties. *See Exhibit 1, Plan at pages 69 & 75.*

14. At all relevant times, the Employer was the sponsor and fiduciary of the Plan.

15. From December 16, 2010 to June 11, 2011, the Provider, a kidney dialysis center, provided medical services to the Patient.  All of the medical services provided were reasonable, ordinary and necessary medical care.

16. In return for the medical services, the Patient assigned all of her benefits and rights under the Plan to the Provider.

17. From December 16, 2010 to June 11, 2011, the Patient incurred medical expenses in the amount of One Hundred Ninety-Six Thousand Seven Hundred and Ninety Dollars and 00/100 dollars ($196,790.00), on which the Provider submitted claims under the belief that the Plan would properly pay the benefits.  *See attached Exhibit 2 – Table "Breakdown of Billed Charges and Plan*

6

*Payments."*

18. MSP requires an initial 3-month waiting period before an End Stage Renal Disease ("**ESRD**") patient is eligible for Medicare benefits (the "**Waiting Period**").

19. During the Patient's Waiting Period, from December 16, 2010 to February 28, 2011, the Plan paid claims submitted on behalf of the Patient by the Provider pursuant to the Plan terms at one hundred percent (100%) of billed charges.

20. On March 1, 2011, the Patient was eligible for ESRD Medicare coverage in accordance with the MSP, and eligibility concluded through June 11, 2011 (the "**Medicare Period**").

21. On March 1, 2011, the Plan payments to the Provider went from 100% of billed charges down to 11.6% of billed charges, without any explanation or change in the Plan.

22. During the month of **March, 2011**, the Provider billed $1,300 per dialysis treatment, and the Plan paid $150.17, representing 11.6% of billed charges. The explanation of benefits form indicated that the remaining balance was the

7

Patient's Obligation. Pursuant to Medicare regulations, at no time did the Provider bill the Patient for those remaining balances.

23. During the month of **April, 2011**, the Provider billed $1,300 per dialysis treatment, and the Plan paid $150.39, representing 11.6% of billed charges. The explanation of benefits form indicated that the remaining balance was the Patient's Obligation. Pursuant to Medicare regulations, at no time did the Provider bill the Patient for those remaining balances.

24. During the month of **May, 2011**, the Provider billed $1,300 per dialysis treatment, and the Plan paid $147.23, representing 11.3% of billed charges. The explanation of benefits form indicated that the remaining balance was the Patient's Obligation. Pursuant to Medicare regulations, at no time did the Provider bill the Patient for those remaining balances.

25. During the month of **June, 2011**, the Provider billed $1,300 per dialysis treatment, and the Plan paid $147.39, representing 11.3% of billed charges. The explanation of benefits form indicated that the remaining balance was the Patient's Obligation. Pursuant to Medicare regulations, at no time did the Provider bill the Patient for those remaining balances.

26. In total, during the Medicare Period, the Provider billed charges of One Hundred Twenty-nine Thousand Seven Hundred and 00/100 dollars ($129,700), and the Plan paid Fourteen Thousand Six Hundred Forty-nine and 01/100 dollars ($14,649.01), representing a total of approximately 11% of total billed charges for the time period, and leaving a balance of $115,050.99.

27. On June 16, 2011, the Patient received a kidney transplant and no longer needed Provider's medical services.

28. CBCA, the Plan's third party administrator, processed claims for the Plan, during the Waiting Period, according to the terms and conditions of the Plan's benefit document.

29. However, during the Medicare Period, CBCA failed to follow the Plan's plain and unambiguous terms for payment of claims.

30. CBCA sent the Explanation of Benefits statements ("**EoB**"s) to the Provider.

31. Initially the EoBs did not indicate the reason for the partial denials, but the ultimate stated reason was that the charges exceeded the usual and customary allowance.

32. To date, the Defendants have not provided plan documentation explaining how

they determined or calculated the reimbursements despite repeated requests by the Provider.

33. The Plan engaged EthiCare Advisors, Inc. ("EthiCare"), a third party repricer, to assist in repricing the claims.

34. The Plan paid EthiCare for its repricing services according to a percentage of the savings, *i.e.,* the difference between the billed charges and the repricings.

35. During all relevant times, the Plan was responsible for primary payment of the Patient's dialysis treatments in accordance with the Plan provisions and the MSP.

36. The Plan has refused to pay the remaining outstanding balance of One Hundred Fifteen Thousand Fifty and 99/100 dollars ($115,050.99).

37. On November 21, 2011, the Provider sent a letter to the Plan Administrator and the Employer (the "**Appeal Letter**"), questioning the Plan's reduced payment of claims and requesting documents governing the Plan, as well as all documentation used to determine the amount of benefits payable under the Plan for the services provided by the Provider during the dates of service. *Appeal Letter is attached hereto as Exhibit 3.*

*38.* On January 19, 2012, CBCA responded to the Appeal Letter by making a final

determination (the "**Denial Letter**") upholding the original denial of benefits

decision and informing the Provider that CBCA had engaged EthiCare to help

determine that the billed charges exceeded the "Usual and Reasonable Charge"

as defined by the Plan. *Denial Letter is attached hereto as Exhibit 4.*

39. On page 40 of the Plan, the "Usual and Reasonable Charge" is defined as:

> a *charge* which is not higher than the usual charge made by
>
> the Provider of the care or supply and does not exceed the
>
> usual charge made by most Providers of like service in the
>
> same area.  This test will consider the nature and severity of
>
> the condition being treated.  It will also consider medical
>
> complications or unusual circumstances that require more
>
> time, skill or experience. *See Exhibit 1, The Plan, at p. 40*
>
> *(emphasis added).*

40. On page 41, the Plan defines "Excess Charges" as "[t]he part of an expense for

care and treatment of an Injury or Sickness that is in excess of the Usual and

Reasonable Charge."

41. The Provider's billed charges were usual, customary and reasonable ("UCR"), were not higher than the usual charge made by providers of such care or supply in the same area, and were not for treatment of medical complications and unusual circumstances that required additional time, skill, or experience.

42. Beginning on March 1, 2011, the Patient had Medicare coverage which was secondary to the Plan under the MSP laws.

43. Beginning on March 1, 2011, the Plan took into account the Patient's Medicare coverage and paid at or near Medicare coverage rates instead of paying reimbursement of the Usual and Reasonable Charges.

44. The Plan failed to determine reimbursement rates in adherence with the Plan language.

45. The Plan's determination of reimbursement amounts was arbitrary and capricious and failed to adhere to the benefit requirements according to the Plan documentation and the relevant MSP provisions.

46. The Provider has exhausted its administrative remedies.

**COUNT I**

**CLAIM FOR THE PLAN BENEFITS BY THE PROVIDER AS ASSIGNEE**

**OF THE PATIENT PURSUANT TO ERISA 502, 29 U.S.C. § 1132(a)**

47. The allegations of paragraphs 1−46 are re-alleged by reference.

48. The medical expenses are covered and all prerequisites met in accordance with the Plan.

49. The Provider was a valid assignee of the Patient, and the Plan treated the Provider as the assignee of the Patient.

**COUNT II**

**BREACH OF FIDUCIARY DUTY BY**

**THE EMPLOYER AND THE PLAN ADMINISTRATOR**

50. The allegations of paragraphs 1−46 are re-alleged by reference.

51. The Employer is the Plan sponsor and a fiduciary under ERISA 3(21), 29 U.S.C. §1002(21).

52. The Plan Administrator is a fiduciary under ERISA 3(21), 29 U.S.C. §1002(21).

53. As fiduciaries, the Employer and Plan Administrator were required to operate solely in the interests of the Plan Patients and beneficiaries for the exclusive purpose of providing benefits.

54. As fiduciaries, the Employer and Plan Administrator were required to comply with the terms of the Plan. ERISA 404, 29 U.S.C. §1104.

55. The Employer and Plan Administrator committed the following acts:

  a. They failed to pay proper reimbursement for the Patient's medical expenses per the Plan's plain and unambiguous language.

  b. They considered the Patient's Medicare entitlement, as well as her ESRD condition, in determining the rate at which it reimbursed the Provider for medical services.

  c. Their method of calculating the usual, customary, and reasonable charges damaged Plan Participants as a whole.

  d. They failed to notify and explain to the Patient and the Provider that their claims for benefits due under the Plan were partially denied.

  e. To date, the Employer and Plan Administrator have refused to provide plan documentation of the methodology used to determine Patient's

reimbursement rates.

56. These acts constituted a breach of the Employer's and Plan Administrator's fiduciary duties.

## COUNT III

## VIOLATION OF MEDICARE SECONDARY PAYER ACT BY THE EMPLOYER, THE PLAN ADMINISTRATOR, AND THE PLAN

57. The allegations of paragraphs 1−46 are re-alleged by reference.

58. The Plan is a "Large Group Health Plan" as defined by 42 U.S.C. §1395y(b)(1)(B)(iii).

59. The Plan is a "primary Plan" as defined by 42 U.S.C. §1395y(b)(2)(A)(ii).

60. The Medicare Secondary Payer Act, 42 U.S.C. §1395y(b)(3)(A), imposes a private cause of action against a "primary plan which fails to provide for primary payment (or appropriate reimbursement)."

61. The Plan failed to provide for primary payment (or appropriate reimbursement), as required under the MSP.  *Id*.

62. The Employer, the Plan Administrator, and the Plan took into account the Patient's Medicare eligibility by differentiating between the benefits provided to

15

Patient as an ESRD patient and benefits to other Participants.

63. The Plan reimbursed the Provider at its full charges during the Waiting Period; however during the ensuing Medicare Period, the Plan paid at either Medicare rates or at greatly reduced rates.

**WHEREFORE**, the Plaintiff prays and demands that judgment be rendered in favor of the Plaintiffs and against the Defendants jointly and severally, as follows:

A.   A declaration that Plaintiff is entitled to recover benefits due under the terms of the Plan for costs for the prescribed treatment of the Patient;

B.   A declaration that Plaintiff is entitled to enforce the Patient's rights under the terms of the Plan, which Defendants have breached by wrongfully refusing to pay valid claims to the Provider;

C.   An Order declaring the Employer and the Plan Administrator have breached their fiduciary duties;

D.   An award of the Plaintiff's compensatory damages in the amount of $115,050.99;

E.   A judgment in favor of the Plaintiff in an amount equal to the damages it

has suffered as a result of the Employer's and the Plan Administrator's breaches and/or in an amount equal to the amount the Employer and the Plan Administrator have profited by their breaches;

**F.**   An award to the Plaintiff for interest and attorney fees, pursuant to ERISA 502(g), 29 U.S.C. §1132(g);

**G.**   An award to the Plaintiff of $110.00 a day penalty from the date the Plan originally failed to provide proper notice to claimant, pursuant to ERISA § 502(c)(1) for failure to provide proper notice and failure to disclose complete documentation of the methodology it used to determine the reimbursement rates for the Patient's claims;

**H.**   A judgment in favor of the Plaintiff in an amount equal to the damages it has suffered as a result of the Employer's and the Plan Administrator's breaches;

**I.**   An Order declaring the Plan has violated the Medicare Secondary Payer Act, 42 U.S.C. §1395y, *et al*;

**J.**   A judgment in favor of the Plaintiff in an amount equal to double the damages it has suffered as a result of the Plan's failure to provide for primary

payment, pursuant to 42 U.S.C. §1395y(b)(3)(A); and

**K.**     An award of such other relief that the Court deems fair, just, or equitable.

Respectfully submitted this 10th day of December, 2012.

                            __/s/ Douglas Gibson_____
                            Douglas T. Gibson,
                            Georgia Bar No. 292780
                            Miyong ("Mimi") Park
                            Georgia Bar No. 485321
                            THE GIBSON FIRM, LLC
                            3231 South Cherokee Lane, Suite 900
                            Woodstock, Georgia 30188
                            Telephone (770) 874-7004, ext. 104
                            Facsimile  (770) 874-7005